## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **FLORIDA GAS TRANSMISSION COMPANY, LLC,** | § § § | **CASE NO. 3:22-cv-236** |
| *Plaintiff*, | § § | **JUDGE J. BROWN** |
| vs. | § § § | **MAG. JUDGE A. EDISON** |
| **1.77 ACRES OF LAND, MORE OR LESS, PERMANENT EASEMENT (PIPELINE RIGHT-OF-WAY), 9.55 ACRES OF LAND, MORE OR LESS, TEMPORARY WORK SPACE, 0.05 ACRES OF LAND, MORE OR LESS, TEMPORARY ACCESS ROAD EASEMENT AND 0.35 ACRES OF LAND, MORE OR LESS, PERMANENT ACCESS ROAD EASEMENT IN BRAZORIA COUNTY, TEXAS, TRACT NO. BL12-TX-BR-001.000,** *et al.*, | § § § § § § § § § § § § § § | |
| *Defendants*. | § | |

## PLAINTIFF FLORIDA GAS TRANSMISSION COMPANY, LLC'S MOTION FOR ORDER CONFIRMING CONDEMNATION AUTHORITY AND AWARDING IMMEDIATE POSSESSION OF EASEMENTS, <u>AND TO EXPEDITE BRIEFING AND HEARING SCHEDULE</u>

**ZABEL FREEMAN**
Thomas A. Zabel (Attorney in Charge)
Texas Bar No. 22235500
FBN 12160
tzabel@zflawfirm.com
1135 Heights Boulevard
Houston, TX 77008
713-802-9117 (telephone)
713-802-9114 (facsimile)

Of Counsel:
James A. Freeman
Texas Bar No. 00796580
jfreeman@zflawfirm.com
Vadim O. Bourenin
Texas Bar No. 24076284
FBN 3146033
vbourenin@zflawfirm.com
1135 Heights Boulevard
Houston, TX 77008
713-802-9117 (telephone)
713-802-9114 (facsimile)

**ATTORNEYS FOR PLAINTIFF**
**FLORIDA GAS TRANSMISSION**
**COMPANY, LLC**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................... iv

INTRODUCTION ................................................................................ 1

FACTS ................................................................................................ 2

I.      Concise Statement of Undisputed Material Facts ......................... 3

II.     Project Description ....................................................................... 4

III.    FGT Has Entered into a Precedent Agreement for Gas Transportation Services and Is Finalizing Contracts for Construction of the Project ........... 5

ARGUMENT ....................................................................................... 6

I.      FGT Is Authorized to Condemn the Easements under Rule 71.1 and the NGA ............................................................................................ 6

II.     In this Condemnation Action under the NGA and Rule 71.1, the Court Has the Authority under Rule 65 to Grant FGT Immediate Possession of the Easements ............................................................................. 8

        A.      FGT Is a Holder of a Certificate of Public Convenience and Necessity, and the Easements Are Necessary for the Brazoria County Project ....................................................................... 10

        B.      FGT Has Been Unable to Reach an Agreement with Defendants Regarding Compensation .................................................... 11

        C.      FGT Has Satisfied the Criteria for Preliminary Injunctive Relief ..... 13

                1.      FGT will likely succeed on the merits ...................................... 14

                2.      Without immediate possession, FGT will suffer irreparable injury .................................................................................. 14

                        a.      Contractual deadlines ................................................... 17

                        b.      Contractual damages, penalties, and cost increases ...... 18

                3.      The threatened injury from the denial of injunctive relief outweighs any harm to Defendants .......................................... 19

                4.      An injunction granting immediate possession will serve the public interest ............................................................. 21

III.    Expedited Briefing and Hearing Is Needed to Enable FGT to Timely Place Brazoria County Project In Service .................................................... 21

RELIEF REQUESTED .......................................................................... 21

# INDEX OF AUTHORITIES

**CASES**                                                                                          **PAGE**

*Am. Energy Corp. v. Rockies Express Pipeline LLC*,
No. 2:09-cv-284, 2009 WL 2148197 (S.D. Ohio July 14, 2009) .......................... 11

*Am. Energy Corp. v. Rockies Express Pipeline, LLC*,
622 F.3d 602 (6th Cir. 2010) ........................................................................... 6

*Basicomputer Corp. v. Scott*,
973 F.2d 507 (6th Cir. 1992) .......................................................................... 15

*Campbell Soup Co. v. ConAgra, Inc.*,
977 F.2d 86 (3d Cir. 1992) ............................................................................. 15

*Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less*,
768 F.3d 300 (3rd Cir. 2014) .......................................................................... 13

*Columbia Gas Transmission Corp. v. An Easement to Construct, Operate, & Maintain a
24-inch Gas Transmission Pipeline Across Props. in Greene Cnty.*,
No. 3:07cv00028, 2007 WL 2220530 (W.D. Va. July 31, 2007) ......................... 12

*Columbia Gas Transmission Corp. v. An Exclusive Natural Gas Storage Easement*,
747 F. Supp. 401 (N.D. Ohio 1990) ................................................................... 8

*CompuServe Inc. v. Cyber Promotions, Inc.*,
962 F. Supp. 1015 (S.D. Ohio 1997) ................................................................ 15

*E. Tenn. Natural Gas, LLC v. 3.62 Acres in Tazewell Cnty.*,
No. Civ.A. 1:06CV00028, *et seq.*, 2006 WL 1453937
(W.D. Va. May 18, 2006) .................................................................................. 17

*E. Tenn. Natural Gas Co. v. Sage*,
361 F.3d 808 (4th Cir. 2004) .....................................................................*passim*

*Fla. Gas Transmission Co., LLC v. 2.876 Acres of Land*,
No. 4:18-CV-1162, 2018 WL 4103624 (S.D. Tex. June 20, 2018) ...................... 14

*Gerardi v. Pelullo*,
16 F.3d 1363 (3d Cir. 1994) ........................................................................... 15

*Guardian Pipeline, L.L.C. v. 295.49 Acres of Land*,
210 F. Supp. 2d 971 (N.D. Ill. 2002) ............................................................ 7, 20

*Guardian Pipeline, L.L.C. v. 529.42 Acres of Land*,
2008 WL 1751358 (E.D. Wisc. Apr. 11, 2008)…………………………………….16

*Gulf Crossing Pipeline Co. LLC v. 7.50 Acres, More or Less*,
No. 4:08CV178, 2008 WL 2774534 (E.D. Tex. July 8, 2008).............................. 19

*Gulf Crossing Pipeline Co. v. 86.36 Acres of Land*,

No. 08-689, 2008 WL 2465892 (W.D. La. June 18, 2008).....................................9

*Janvey v. Alguire,*
   647 F.3d 585 (5th Cir. 2011) ..........................................................................14

*Kern River Gas Transmission Co. v. Clark Cnty.,*
   757 F. Supp. 1110 (D. Nev. 1990) ...................................................................7

*Kirby Forest Indus. v. U.S.*
   467 U.S. 1 (1984) .............................................................................................7

*Merrill- Lynch, Pearce, Fenner & Smith v. Bradley,*
   756 F.2d 1048 (4th Cir. 1985) ......................................................................16

*N. Border Pipeline Co. v. 86.72 Acres of Land,*
   144 F.3d 469 (7th Cir. 1998) ..........................................................................9

*N. Border Pipeline Co. v. 127.79 Acres of Land, More or Less, In Williams Cnty., N.D.,*
   520 F. Supp. 170 (D.N.D. 1981)....................................................................12

*Nat'l Fuel Gas Supply Corp. v. 138 Acres of Land in the Village of Springville,*
   84 F. Supp. 2d 405 (W.D.N.Y. 2000).............................................................7

*Natural Gas Pipeline Co. of Amer., LLC v. Tract No. TX-WA-009.050, 1.22 Acres of Land, More or Less,*
   No. 20-cv-00003-DC-DF, 2020 WL 3579714 (W.D. Tex. Apr. 08, 2020)10, 19, 20

*Opulent Life Church v. City of Holly Springs Miss.,*
   697 F.3d 279 (5th Cir. 2012) ........................................................................15

*Schneidewind v. ANR Pipeline Co.,*
   485 U.S. 209 (1988) ........................................................................................7

*Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres, More or Less, in Monroe Township,*
   Nos. 08-168, *et seq.*, 2008 WL 4346405 (W.D. Pa. Sept. 19, 2008)....................15

*Tenn. Gas. Pipeline Co. LLC v. Del. Riverkeeper Network,*
   921 F. Supp. 2d 381 (M.D. Pa. 2013).............................................................15

*Tenn. Gas Pipeline Co. v. Mass. Bay Transp. Auth.,*
   2 F. Supp. 2d 106 (D. Mass. 1998) .................................................................7

*Texans for Free Enter. v. Texas Ethics Comm'n,*
   732 F.3d 535 (5th Cir. 2013) ........................................................................14

*Tex. E. Transmission, LP v. 3.2 Acres Permanent Easement,*
   No. 2:14-cv-2650, 2015 WL 152680 (S.D. Ohio Jan. 12, 2015).................*passim*

*Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049,*
   910 F.3d 1130 (11th Cir. 2018).......................................................................9

*USG Pipeline Co. v. 1.74 Acres,*

v

1 F. Supp. 2d 816 (E.D.Tenn. 1998)........................................................8

*Va. Ry. Co. v. Sys. Fed'n No. 40,*
   300 U.S. 515 (1937)........................................................20

*Williams Natural Gas Co. v. City of Oklahoma City,*
   890 F.2d 255 (10th Cir. 1989) .......................................11

## Statutes

15 U.S.C. § 717b(2) ........................................................11

15 U.S.C. § 717f(h).........................................1, 6, 7, 8, 10, 11

15 U.S.C. § 717r………………………………………………………....11

## Regulations

18 C.F.R. §157.205 ........................................... 3, 4, 5, 10

18 C.F.R. §157.208 ........................................... 5, 10

18 C.F.R. §157.210 ........................................... 5, 10

18 C.F.R. §157.211 ........................................... 5, 10

## Rules

FED. R. CIV. P. 56 ………………………………………………………1

FED. R. CIV. P. 65 ………………………………………………………1

FED. R. CIV. P. 71.1 ………………………………………………6, 7, 8

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Florida Gas Transmission Company, LLC ("FGT"), files this Motion for Order Confirming Condemnation Authority and Awarding Immediate Possession of Easements, and to Expedite Briefing and Hearing Schedule, pursuant to Federal Rules of Civil Procedure 56, 65(a), and 65(b).

## **INTRODUCTION**

FGT respectfully requests that the Court: (1) enter an order confirming that FGT has the right to condemn the Easements (as defined in FGT's Verified Complaint for Condemnation ("Complaint") (the "Easements") under the Natural Gas Act, 15 U.S.C. § 717f(h) ("NGA"), (2) issue a temporary restraining order or a preliminary injunction granting FGT immediate possession of the Easements to enable FGT to immediately commence on-site pre-construction and construction-related activities, and thereafter operation and maintenance of the pipeline pending adjudication of the amount of just compensation due Defendants for the Easements, and (3) establish, pursuant to Federal Rule of Civil Procedure 65, the type, amount, and terms of security FGT must provide to secure the payment of just compensation to Defendants that will be determined at a later date, and (4) set an expedited schedule for briefing and hearing so that the Court can promptly hear and award the relief FGT seeks in order for FGT to begin pre-construction and construction-related activities.

The Easements for which FGT seeks confirmation of condemnation authority and immediate possession are necessary for FGT's pipeline project, which is the subject of this action, and which is identified in FGT's Complaint (the "Brazoria County Project").

1

The tracts of land that the Easements will burden ("Property" or "Properties"), and the owners of the Properties and persons or entities that claim an interest in the Properties are named as Defendants and are identified on Exhibit A to the Complaint.

Nearly every court across the country, including courts in the Fifth Circuit and in this District, when presented with a request for similar relief, have consistently granted immediate possession of the easements sought for the NGA pipeline projects at issue in those cases, and FGT meets or exceeds the criteria that justified the requested injunctive relief in those cases.  Specifically, the evidence presented with this Motion conclusively establishes FGT's right to condemn the Easements, and FGT satisfies all of the well-established criteria in this District and the Fifth Circuit for the granting and affirmation of preliminary injunctive relief for immediate possession of the Easements.

## FACTS

**I.    CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS.**

FGT is natural gas company, as defined by section 2(a) of the Natural Gas Act, 15 U.S.C. §§ 717 a-z, engaged in the transmission of natural gas in interstate commerce. *See* FGT's Complaint ¶¶ 9-10; *see also* Exhibit A, Affidavit of Diego Aponte, attached hereto and incorporated herein, at ¶ 6.

FGT is subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC") with respect to the Pipeline.  *See* Exhibit A at ¶ 6.

Since the 1950s, FGT has operated an interstate natural gas infrastructure, including in Texas, authorized initially under FERC Dockets Nos. G-9262, G-9960, CP62-232, and then Docket CP82-553-000, providing transportation capacity to deliver

natural gas to facilities on the Gulf Coast and Florida.  *See* Exhibit B, Affidavit of Blair

Lichtenwalter, attached hereto and incorporated herein, ¶¶ 7-9; *see also* Exhibit A at ¶ 7.

On November 10, 1982, FERC issued FGT a blanket Certificate of Public

Convenience and Necessity ("Blanket Certificate") under Docket No. CP82-553-000,

authorizing  FGT "to conduct many routine activities and abandon facilities and service

on a self-implementing basis without further authorization by the Commission."  *See*

Exhibit B at Attachment 3.

On June 7, 2022, the Brazoria County Project was authorized in FERC Docket

CP22-142-000, in accordance with the requirement of section 157.205(h) of the FERC

regulations, to construct approximately 2.0 miles of 12-inch diameter lateral pipeline, a

meter and regulation station, and appurtenant facilities in Brazoria County, Texas

(collectively, "the Pipeline"), and to modify and uprate an existing compressor station

unit in Matagorda County, Texas.  *See* Exhibit B at ¶ 14.

The Pipeline facilities in Brazoria and Matagorda Counties, Texas, as determined

by FERC in its 2022 Environmental Assessment Report ("EA"), are a necessary and

integral part of FGT's ability to transport natural gas through its pipelines in interstate

commerce as authorized in the 1956, 1962, and 1982 CPCNs.  *Id*. at ¶ 15.

The 1982 Blanket CPCN regulates the construction, operation, and maintenance of

the Brazoria County Project, described and depicted in FGT's Complaint, as determined

by the 2022 EA in FERC Docket CP22-142-000.  *Id*. at ¶ 15.

In order to construct, own, modify, operate, and maintain the Brazoria County

Project, FGT needs the new permanent and temporary easement rights described in the

Complaint on, over, across, and under the tracts described in Exhibit A to the Complaint. Exhibit A at ¶ 10.

FGT's acquisition of the Easements on, over, across, and under the Properties are necessary for the proper and safe operation of FGT's interstate pipeline transmission system, and for the transportation of natural gas in interstate commerce as required and authorized by the 1956, 1962, and 1982 CPCNs, and as determined by FERC in its 2022 EA and authorized in accordance with the requirement of section 157.205(h) of the FERC regulations in FERC Docket CP22-142-000. *Id*. at ¶ 16.

FGT has made numerous attempts to acquire the Easements identified and described in FGT's Complaint, negotiating with the landowners directly and/or through their attorneys or other representatives, in person, by email, and by sending offer letters, but has been unable to acquire the necessary easements. *Id.*; *see also* Affidavit of Sherri Andrus, attached and incorporated hereto as Exhibit C, at ¶¶ 6-9.

On each of the properties to be burdened by the Easements, the owners have demanded in excess of $3,000. Exhibit C at ¶ 10.

## II.   PROJECT DESCRIPTION.

FGT is a Delaware company in the business of constructing natural gas pipelines and thereafter transporting and marketing natural gas in interstate commerce for the purpose of supplying the public with natural gas. *See* Exhibit B at ¶¶ 6-15. FGT is subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC") under the NGA, 15 U.S.C. § 717 a-z, with respect to the Brazoria County Project that is

an addition to its existing NGA interstate gas pipeline system. *See id.*; *see also* Exhibit A at ¶¶ 6- 8.

On June 7, 2022, FERC authorized the construction, operation, and maintenance of approximately 2.0 miles of 12-inch lateral pipeline and appurtenant facilities in Brazoria and Matagorda Counties, Texas, to deliver up to 68,000 million Btu/day of firm transportation capacity to Brotman Generating, LLC's peak power generation plant, capable of providing up to 288-megawatt of generation for the Electric Reliability Council of Texas and Greater Houston area electricity markets during peak demand times, including severe heat waves and winter weather events, in FERC docket CP22-142-000. *See* Exhibit A at ¶ 8; Exhibit B at ¶ 13. FERC concluded that "approval of the Project would not constitute a major federal action significantly affecting the quality of the human environment. The Project would be consistent with the requirements of sections 157.205, 157.208, 157.210, and 157.211 of the Commission's regulations." Exhibit A at ¶ 8.

FGT attempted to acquire the Easements from Defendants by negotiation but was unsuccessful. The details of FGT's efforts to acquire the Easements from Defendants are set forth in Exhibit C.

### III. FGT HAS ENTERED INTO A PRECEDENT AGREEMENT FOR GAS TRANSPORTATION SERVICES AND IS FINALIZING CONTRACTS FOR CONSTRUCTION OF THE PROJECT.

FGT has entered into a binding Precedent Agreement with Brotman Generating, LLC to provide firm transportation capacity for up to 68,000 million Btu/day for delivery to the Brotman Power Plant. Exhibit A at ¶¶ 8, 12. FGT is finalizing time-sensitive construction contracts with qualified and highly sought after natural gas pipeline

construction specialists to begin pre-construction and construction activities on the Brazoria County Project in August 2022, to meet the in-service date of December 1, 2022, so that gas supplies will be available to the Brotman Power Plant this winter and the following summer and thereafter. *Id*. at ¶10.

Despite significant and protracted attempts to acquire the Easements, FGT has been unable to reach an agreement with Defendants to acquire the Easements. FGT has made oral and written monetary offers to Defendants for the Easements, but Defendants have either rejected those offers, or not responded to them. Exhibit C at ¶¶ 6-9. When the certificate holder "cannot acquire by contract, or is unable to agree with the owner to the compensation to be paid," the certificate holder "may acquire the same by the exercise of the right of eminent domain." 15 U.S.C. § 717f(h). FGT's "acquisition of a FERC certificate cloaks it with the federal power of eminent domain[.]" *USG Pipeline Co. v. 1.74 Acres*, 1 F. Supp. 2d 816, 825 (E.D.Tenn. 1998); *see also Am. Energy Corp. v. Rockies Express Pipeline, LLC*, 622 F.3d 602, 604 (6th Cir. 2010).

## ARGUMENT

### I.     FGT IS AUTHORIZED TO CONDEMN THE EASEMENTS UNDER RULE 71.1 AND THE NGA.

FGT's right to condemn the Easements is governed substantively by the NGA and procedurally by Federal Rule of Civil Procedure 71.1. Although the NGA, enacted in 1938, originally permitted condemnation under the "practice and procedure . . . of the State" (*see* 15 U.S.C. § 717f(h)), this was superseded in 1951 by the adoption of Rule 71.1 (formerly Rule 71(A)), which provides: "These rules govern proceedings to

condemn real and personal property by eminent domain, except as this rule provides otherwise."[1]  Consequently, state procedural laws governing condemnation actions do not apply to FGT's exercise of eminent domain.[1]  Likewise, the NGA preempts state substantive laws and constitutional provisions that are inconsistent with the NGA: "Congress, in the Natural Gas Act, had enacted a comprehensive scheme that preempted state law when that law was an obstacle to fulfillment of the NGA purposes." *Guardian Pipeline, L.L.C. v. 529.42 Acres of Land*, 210 F. Supp. 2d 971, 975 (N.D. Ill. 2002) (citing *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 209, 294 (1988)).  In *Kern River Gas Transmission Company v. Clark County*, the court stated:

> It is manifestly unlikely that Congress would have created the substantive right of eminent domain, clearly addressed in the Natural Gas Act, only to have that right held hostage to various state substantive schemes . . . .  Such an usurpation of a federal substantive right would violate the supremacy clause of the U.S. Constitution.

---

[1] *See e.g.*, *Nat'l Fuel Gas Supply Corp. v. 138 Acres of Land in the Village of Springville*, 84 F. Supp. 2d 405, 415 (W.D.N.Y. 2000) ("[T]he court finds that Rule 71A supersedes the practice and procedure clause of section 717f(h) and that it is federal, not state, procedural law that governs the present condemnation proceeding.").  The Advisory Committee notes to Rule 71.1 further state: "Rule [71.1] affords a uniform procedure for all cases of condemnation invoking the national power of eminent domain and . . . supplants all statutes prescribing a difference procedure."  FED. R. CIV. P. 71A advisory committee's notes (1951 amendment).  *See Kirby Forest Indus. v. U.S.,* 467 U.S. 1, 4 n.2 (1984) ("The adoption in 1951 of Rule [71.1] capped an effort to establish a uniform set of procedures governing all federal condemnation actions.").  *See also Tenn. Gas Pipeline Co. v. Mass. Bay Transp. Auth.*, 2 F. Supp. 2d 106, 111 (D. Mass. 1998) (holding pipeline was not required to comply with Massachusetts state eminent domain procedures because it sought to condemn property under the NGA, not state statutes).

757 F. Supp. 1110, 1118 (D. Nev. 1990).[2]  This federal preemption under the NGA of state substantive law extends to state constitutional provisions.  *Columbia Gas Transmission Corp. v. An Exclusive Natural Gas Storage Easement*, 747 F. Supp. 401, 403-04 (N.D. Ohio 1990).  In sum, together the NGA and Rule 71.1 preempt state regulations, statutes, and constitutional provisions that interfere with, or are inconsistent with, a natural gas company's ability to condemn property under section 717f(h) and Rule 71.1.

## II.   IN THIS CONDEMNATION ACTION UNDER THE NGA AND RULE 71.1, THE COURT HAS THE AUTHORITY UNDER RULE 65 TO GRANT FGT IMMEDIATE POSSESSION OF THE EASEMENTS.

The NGA grants the substantive right of eminent domain to the holder of a certificate of public convenience and necessity who cannot, by contract with the property owner, acquire property needed to construct a pipeline.  15 U.S.C. § 717f(h).  The NGA does not specifically provide that a natural gas company may take possession of property pending trial to determine just compensation.  *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 822 (4th Cir. 2004) (the NGA "like most statutes giving condemnation authority to government officials or private concerns, contains no provision for quick-take or immediate possession").  Nevertheless, "the overwhelming majority of courts which have addressed the issue have held that immediate possession is available in a condemnation action under the Natural Gas Act upon a well-founded motion for a

---

[2] *See also USG Pipeline Co.*, 1 F. Supp. 2d at 825-26 (holding the NGA preempts state law requiring a plaintiff to prove, before being permitted to condemn, that its public use of the property is a higher public use than an existing public use); *Tenn. Gas Pipeline Co.,* 2 F. Supp. 2d at 111 (state statute that barred the taking of property within the location of any railroad was preempted by the NGA, which "occupies the field" with respect to the regulation of natural gas facilities).

preliminary injunction. . . .   The procedure set forth in *Sage* represents the approach taken by virtually every federal court that has considered the issue[.]"   *Gulf Crossing Pipeline Co. v. 86.36 Acres of Land*, No. 08-689, 2008 WL 2465892, *3 (W.D. La. June 18, 2008). *See Sage*, 361 F.3d at 825 ("[W]e hold that once a district court determines that a gas company has the substantive right to condemn property under the NGA, the court may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction."); *see also Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*, 910 F.3d 1130, 1152 (11th Cir. 2018) ("Every circuit that has addressed this issue has held that a preliminary injunction granting immediate access is permissible so long as the pipeline company's right to condemn the property has been finally determined, such as through the grant of a motion for summary judgment, and all other requirements for issuance of a preliminary injunction have been met.") (collecting cases).

Before a court can rule on a motion for immediate possession, it must first determine that the condemnor is entitled to condemn the property in question.  *Sage*, 361 F.3d at 825, 828; *N. Border Pipeline Co. v. 86.72 Acres of Land*, 144 F.3d 469, 471 (7th Cir. 1998). This is so because "[a] preliminary injunction may issue only when the moving party has a substantive entitlement to the relief sought."  *N. Border*, 144 F.3d at 471.

The NGA provides three prerequisites that a condemnor must satisfy in order to possess the substantive right of condemnation:

(1) It must hold a certificate of public convenience and necessity;

(2) The land in question is necessary to the operation of the pipeline; and

3) It cannot acquire the land by contract, or is unable to reach an agreement with the owner of the property to the compensation to be paid for the easement.

*See* 15 U.S.C. § 717f(h); *see also Natural Gas Pipeline Co. of Amer., LLC v. Tract No. TX-WA-009.050, 1.22 Acres of Land, More or Less,* No. 20-cv-00003-DC-DF, 2020 WL 3579714, *3 (W.D. Tex. Apr. 08, 2020).[3]  FGT readily satisfies all three prerequisites.

A.     **FGT Is a Holder of a Certificate of Public Convenience and Necessity, and the Easements Are Necessary for the Brazoria County Project.**

FERC granted FGT Certificates of Public Convenience and Necessity with respect to the Pipeline in 1956, 1962 and 1982, and thus, FGT satisfies the first requirement for the exercise of the power of eminent domain.  The 1982 Blanket Certificate authorizes the construction and operation of FGT's natural gas transmission system, and the performance of certain activities on its lines and facilities, including construction of the Brazoria County Project, without the need for further FERC orders.  *See*  Exhibit B at ¶¶ 14-15.  Moreover, on May 28, 2022, FERC issued its EA for the Brazoria County Project, finding that the project would not constitute a major federal action and it "would be consistent with the requirements of sections 157.205, 157.208, 157.210, and 157.211 of the Commission's regulations."  *See* Doc. No. 1-3; *see also* Exhibit B at ¶ 6.

---

[3] The NGA also requires that in order for a federal court to have jurisdiction over a condemnation matter, the amount claimed by the landowner must be in excess of $3,000. 15 U.S.C. § 717f(h).

Because the NGA assigns FERC the exclusive jurisdiction to regulate the facilities of interstate natural gas pipelines,[4] courts lack jurisdiction to consider any attempt to collaterally challenge a FERC order.  *See, e.g., Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 264 (10th Cir. 1989) ("eminent domain authority granted by the district courts under [the NGA] does not provide challengers with an additional forum to attack the substance and validity of a FERC order.  The district court's function is not appellate but, rather, to provide for enforcement.").  Accordingly, any challenges to a FERC Certificate must be timely raised in a FERC proceeding or pursuant to the procedure set forth in 15 U.S.C. § 717r, not in a condemnation proceeding.

The Easements FGT seeks are necessary for the construction of the Brazoria County Project, as authorized by FERC.  *See* Exhibit A at ¶ 10; Exhibit C at ¶ 3.

**B.      FGT Has Been Unable to Reach an Agreement with Defendants Regarding Compensation.**

Despite significant and protracted efforts, FGT has been unable to acquire the Easements by contract.   Under the NGA, FGT may exercise the right of eminent domain when it "cannot acquire by contract, or is unable to agree with the owner of the property to the compensation to be paid for the necessary right-of-way to construct, operate, and maintain a pipeline or pipelines for the transportation of natural gas."  15 U.S.C. § 717f(h).  FGT has satisfied the requirement that it be unable to acquire the necessary Easements by

---

[4] *See* 15 U.S.C. § 717b(2) and *Am. Energy Corp. v. Rockies Express Pipeline LLC*, No. 2:09-cv-284, 2009 WL 2148197, *3 (S.D. Ohio July 14, 2009) (district court lacks jurisdiction to review the validity or conditions of a FERC certificate, and the function of the district court is not to provide appellate review, but rather to provide for enforcement).

contract or negotiations with Defendants, despite its repeated efforts to do so.  Each of the Defendants has demanded in excess of $3,000 in compensation, and FGT has offered in excess of that to the owners of each affected tract, thereby satisfying the NGA's jurisdictional amount.  Exhibit C at ¶ 10.

Once a condemnor's authority to condemn has been established, courts throughout the country have granted immediate possession on two different grounds.  In *Northern Border Pipeline Co. v. 127.79 Acres of Land, More or Less, In Williams County, N.D.,* 520 F. Supp. 170, 172 (D.N.D. 1981), the court granted immediate possession pursuant to the "inherent powers doctrine," which "provides a federal court with various common law equity devices to be used incidental to the authority conferred upon the court by rule or statute."  Other courts have granted immediate possession pursuant to Rule 65(a), holding that a "gas company must satisfy the strict requirements for a preliminary injunction,"— *i.e.,* "demonstrate that it will suffer irreparable harm without immediate possession, and the company's harm must be weighed against any harm to the landowner."  *Sage*, 361 F.3d at 825. As the court in *Sage* explained:

> Under the rules, then, a gas company with condemnation power under the NGA may apply under Rule 65 (a) for a preliminary injunction awarding immediate possession . . . . Congress has never given any indication that it disapproves of this procedure. Indeed, because Congress has not acted to restrict the availability of Rule 65(a)'s equitable (injunctive) remedy in an NGA condemnation, we conclude that the rule applies.

361 F.3d at 822-24; *see also Columbia Gas Transmission Corp. v. An Easement to Construct, Operate, & Maintain a 24-inch Gas Transmission Pipeline Across Props. in Greene Cnty.*, No. 3:07cv00028, 2007 WL 2220530, *2 (W.D. Va. July 31, 2007).

The standard is similar whether a court proceeds under the inherent powers doctrine or Rule 65(a). *Northern Border*, 520 F. Supp. at 173. Courts across the nation, in virtually every circuit, have overwhelmingly recognized their authority to grant immediate possession of easements to natural gas companies seeking condemnation under the NGA. *See* Exhibit D for a table of cases in each federal circuit where courts granted immediate possession to NGA certificate holders.

### C.   FGT Has Satisfied the Criteria for Preliminary Injunctive Relief.

Once an NGA certificate holder has established its substantive right to condemn the property rights at issue, immediate possession is available if it can satisfy the criteria for preliminary injunctive relief. "[N]umerous federal courts have held that where a plaintiff establishes a substantive right to condemn property under the NGA, courts may exercise their inherent equitable power to grant immediate possession through the issuance of a preliminary injunction." *Tex. E. Transmission, LP v. 3.2 Acres Permanent Easement*, No. 2:14-cv-2650, 2015 WL 152680, *17 (S.D. Ohio Jan. 12, 2015). Although the Fifth Circuit has not directly addressed the issue, other circuits have adopted the reasoning of federal courts granting immediate possession in condemnation actions under the NGA. *See, e.g., Sage*, 361 F.3d at 828; *Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less*, 768 F.3d 300, 315 (3rd Cir. 2014).

In order to be entitled to preliminary injunctive relief, the Fifth Circuit has established four criteria that must be satisfied:

(1)     a substantial likelihood of success on the merits;

(2)     a substantial threat of irreparable injury if the injunction is not issued;

(3)    that the threatened injury if the injunction is denied outweighs any harm that will    result if the injunction is granted; and

(4)    that the grant of an injunction will not disserve the public interest.

*See, e.g., Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 537 (5th Cir. 2013).   FGT has satisfied each of the four criteria, and thus, is entitled to immediate possession of the Easements.

### 1.    FGT will likely succeed on the merits.

FGT is indisputably entitled to condemn the Easements pursuant to its FERC Certificate and the NGA.   Accordingly, as this district recognizes, FGT's substantive right to condemnation demonstrates a strong likelihood of success on the merits.   *See Fla. Gas Transmission Co. LLC v. 2.876 Acres of Land*, No. 4:18-CV-1162, 2018 WL 4103624, *4 (S.D. Tex. June 20, 2018) (possession of FERC certificate of public convenience creates a strong likelihood of success on the merits); *accord Tex. E. Transmission, LP,* 2015 WL 152680 at *5 ("Texas Eastern's substantive right to condemnation demonstrates a strong likelihood of success on the merits.").

### 2.    Without immediate possession, FGT will suffer irreparable injury.

FGT faces a near certainty of irreparable harm if it is not granted the right of immediate possession.   Irreparable harm exists where there is no adequate remedy at law. *See, e.g., Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (harm is irreparable where there is no adequate remedy at law or if legal redress may be obtained only by pursuing a multiplicity of actions).   Here, if FGT is not granted immediate possession, it will be unable to begin and finish construction of the Brazoria County Project and place it in service by

the contractual in-service date.  This, in turn, will affect the readiness of the new power plant to generate power at peak demand times to serve public needs.  FGT will also be deprived of property interests, to which it is entitled.  The deprivation of an interest in real property constitutes irreparable harm.  *See Fla. Gas Transmission,* 2018 WL 4103624 at *4 (citing *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 297 (5th Cir. 2012)).

Irreparable harm also exists when there is a substantial threat of material injury that cannot be adequately compensated through monetary damages.  *See, e.g., Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992); *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 87 (3d Cir. 1992).  The loss of business reputation and goodwill resulting from the inability to transport natural gas through the Pipeline in violation or frustration of FGT's FERC Certificate constitutes an irreparable injury.  *See, e.g., Tex. E. Transmission*, 2015 WL 152680 at *6; *CompuServe Inc. v. Cyber Promotions, Inc.*,  962 F. Supp. 1015, 1027-1028 (S.D. Ohio 1997).

Construction delays in building the Pipeline and the insufficiency or unavailability of any money judgments can likewise constitute irreparable harm.  *See, e.g.*, *Gerardi v. Pelullo*, 16 F.3d 1363, 1373-74 (3d Cir. 1994); *Tenn. Gas. Pipeline Co. LLC v. Del. Riverkeeper Network*, 921 F. Supp. 2d 381, 395 (M.D. Pa. 2013); *Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres, More or Less, in Monroe Township,* Nos. 08-168, *et. seq.*, 2008 WL 4346405, *16 (W.D. Pa. Sept. 19, 2008).  When the failure to grant preliminary relief creates the possibility of the permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury

15

prong is satisfied. *Merrill- Lynch, Pearce, Fenner & Smith v. Bradley*, 756 F.2d 1048, 1055 (4th Cir. 1985). "Undue delay" and "significant financial harm," both to the pipeline and some of its customers, are sufficient to meet the need to show likelihood of irreparable harm in the absence of injunctive relief. *See Sage*, 361 F.3d at 828-29.

A number of district courts have found that requiring construction teams to "skip" a property and return at a later time to complete construction can constitute irreparable harm. *See, e.g.*, *Tex. E. Transmission,* 2015 WL 152680 at *5. In a case involving facts remarkably similar to this case, the court analyzed the irreparable injury necessary for injunctive relief and concluded as follows:

> Because the construction of the Project requires detailed sequencing of numerous disciplines, which must be performed in sequence across the three Spreads, access to the property must be granted immediately to begin construction related activities in order to meet this in-service date. Any delay in granting [plaintiff] access to the Defendant's Property to begin construction activities will impede [plaintiff's] ability to provide the needed energy delivery services determined by FERC to be in the best interest of the public. Additionally, the costs to [plaintiff], its customers and the public will be significantly increased because of skip-around costs if immediate possession is not granted. These increased costs are against public policy, and would be unrecoverable.

*Se. Supply Header, LLC v. 180 Acres in George Cnty.*, No. 2:07CV280KS-MTP, 2008 WL 160700, *3 (S.D. Miss. Jan. 9, 2008).[5] Here, FGT will suffer irreparable harm in several ways absent immediate possession.

---

[5] *See also Columbia Gas Transmission Corp.*, 2007 WL 2220530 at *4 ("Plaintiff will suffer irreparable harm if [the court] den[ies] it immediate access and possession: it will be unable to stay on schedule for the construction of the Pipelines and, therefore, may not be able to meet the time requirements contemplated by the FERC Certificate and will delay delivery of natural gas to customers who need it."); *Guardian Pipeline LLC*, 2008 WL 1751358 at *22 (finding irreparable harm because without immediate possession (1) plaintiff would be unable to meet the

### a.    Contractual deadlines.

Failure to secure immediate possession puts FGT at high risk of being unable to timely place the Pipeline in- service by December 1, 2022, the date its shipper is relying on for the transportation of gas to its plant to use in the generation of electricity.  Courts have held that an inability to meet deadlines is irreparable harm.  *See, e.g.*, *Tex. E. Transmission, LP,* 2015 WL 152680 at * 1;  *Tenn. Gas Pipeline*, 6 F. Supp. 2d at 104 (granting motion for immediate possession upon condemnor's showing that delay could preclude its ability to meet construction deadlines); *E. Tenn. Natural Gas, LLC v. 3.62 Acres in Tazewell Cnty.*, No. Civ.A. 1:06CV00028, *et seq*., 2006 WL 1453937, *14 (W.D. Va. May 18, 2006) (same).

### b.    Contractual damages, penalties, and cost increases.

To meet its contractual deadlines, FGT is finalizing its construction contracts with natural gas pipeline construction specialists to begin construction and operation of the Brazoria County Project.  Failure to timely obtain the necessary Easements for construction will result in schedule delays, which will put FGT at risk to incur significant contractual damages, construction penalties, increased construction costs, and lost transportation revenues.  Exhibit A at ¶¶ 13-14.  "Courts have found such costs sufficient to constitute irreparable harm." *Tex. E. Transmission,* 2015 WL 152680  at *6; *Se. Supply Header*, 2008

---

FERC-imposed deadlines to complete construction, and (2) it would cost plaintiff hundreds of thousands of dollars in expenses to skip over properties scattered at various locations along the route).

WL 160700 at *3; *Tenn. Gas Pipeline*, 6 F. Supp. 2d at 104 (granting motion for immediate possession upon condemnor's showing that delay could preclude its ability to meet construction deadlines); *E. Tenn. Natural Gas*, 2006 WL 1453937 at *14 (same).

Additionally, any delays in FGT's access to the Easements along the pipeline route will cause delay to its contractors and their respective subcontractors. In the current competitive pipeline construction market, construction contractor delays give rise to loss of the contractor's work force, who move onto other jobs, the inability to assure that the contractor's leased equipment will be available for use when needed, and the potential expiration of various contractor use permits containing windows of validity and opportunity.

Finally, construction of the Brazoria County Project is designed as a rolling project with different phases, with one following in sequence after the other. If one phase is delayed, every subsequent phase is thereafter delayed, as well. Otherwise, the contractors would be forced to "move around" parcels of land and return later to complete the project at great cost. Exhibit A at ¶ 18. Such move-arounds have been found to constitute irreparable harm. *See Tex. E. Transmission,* 2015 WL 152680 at *5 ("'[t]o require [the pipeline] to build up to a parcel of land [it] do[es] not possess, skip that parcel, and then continue on the other side would prove wasteful and inefficient'").

### 3. The threatened injury from the denial of injunctive relief outweighs any harm to Defendants.

The balance of harm in this case strongly favors FGT. For Defendants, "[t]he harm to be analyzed is not the harm of possession, since that is a given, but, rather, the

harm of *immediate* possession."  *Natural Gas Pipeline Co.*, 2020 WL 3579714 at *4.

Any harm to Defendants inflicted by the construction of the Brazoria County Project will

be the same regardless of when FGT is granted possession.  As shown above, FGT has a

compelling need to proceed quickly with construction of the Brazoria County Project,

whereas Defendants' hardships will be minimal.  *See id. (*citing *Gulf Crossing Pipeline*

*Co. LLC v. 7.50 Acres, More or Less,* No. 4:08CV178, 2008 WL 2774534, *5 (E.D. Tex.

July 8, 2008) (the potential harm to the pipeline company and the public outweighed any

harm to the defendant landowners).  *See also Sage*, 361 F.3d at 829 (recognizing that any

hardship to the landowner in an NGA condemnation is "slight at best"); *Columbia Gas*

*Transmission,* 2007 WL 2220530 at *14 (finding that defendants will not "suffer any

additional harm other than the harm they will inevitably suffer as a result of the taking

of their property for this project."); *Fla. Gas Transmission,* 2018 WL 4103624 at *5

(when FERC determines that a project is in public interest, it is it is also in the public

interest to complete it without delay).

Defendants will be adequately protected by FGT posting security for the

Easements in an amount determined by the Court, pending a final determination of just

compensation. *Id., see also Tex. E. Transmission,* 2015 WL 152680 at *6.  Accordingly,

the minimal harm, if any, to Defendants is outweighed by FGT's immediate need for

possession of the Easements and the harm FGT will suffer if in the absence of same.

    **4.**    **An injunction granting immediate possession will serve the public interest.**

The U.S. Supreme Court has explained that "courts of equity may go to greater lengths to give 'relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" *Sage*, 361 F.3d at 826 (quoting *Va. Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937)). In any condemnation case, the public will benefit from the timely construction of the pipeline, as it will increase the overall supply of natural gas available to the public. *See Sage*, 361 F.3d at 830 ("Congress passed the Natural Gas Act and gave gas companies condemnation power to insure that consumers would have access to an adequate supply of natural gas at reasonable prices"); *Natural Gas Pipeline Co.,* 2020 WL 3579714 at *5 (because the FERC Certificate included an express statement that the project was in the public interest, the pipeline satisfied its burden to demonstrate that the grant of an injunction would not disserve the public interest); *Guardian Pipeline*, 210 F. Supp. 2d at 979. In this case, delayed construction of the Brazoria County Project will harm the public interest by depriving the public and the country's energy infrastructure of a vital energy resource.

Moreover, lack of immediate possession and the corresponding delays will directly and irreparably harm third parties, including other pipelines and local communities. Other pipelines have entered into interconnect agreements with FGT and will be adversely affected by a cessation or delay in gas deliveries. Furthermore, the Brazoria County Project is needed to provide a means of delivering large volumes of gas to market outlets, and a delay in construction of the project will leave gas volumes stranded and the owners of that gas without market outlets or suitable means of using their gas. Delay of the Brazoria County Project will also hurt numerous other people and entities. For

example, delayed construction will delay payment of wages for construction jobs for local, skilled, and unskilled workers.    The creation of natural gas pipeline construction jobs has been recognized as a benefit to the public.  *See Tex. E. Transmission,* 2015 WL 152680 at *7.    State and local governments will likewise suffer from delayed construction, as projected tax revenues will be delayed or lost.  The public interest will be served in numerous ways by the issuance of a preliminary injunction granting FGT immediate possession.

## IV.  EXPEDITED BRIEFING AND HEARING IS NEEDED TO ENABLE FGT TO TIMELY PLACE BRAZORIA COUNTY PROJECT IN SERVICE.

As noted above, contractual deadlines require FGT to immediately gain access to the Easements.  To facilitate this demanding schedule, FGT respectfully requests that the Court expedite the briefing schedule and set a hearing on this motion pursuant to Federal Rule of Civil Procedure 6(c)(1)(C) at the Court's earliest available and suitable date.

### RELIEF REQUESTED

FGT respectfully requests that the Court enter an Order (1) setting an expedited schedule for briefing and hearing; (2) confirming FGT's right to acquire the Easements by eminent domain under the Natural Gas Act; (3) awarding immediate possession of the Easements to FGT to enable commencement of on-site pre-construction and construction-related activities and to facilitate FGT's subsequent operation and maintenance of the Brazoria County Project pending trial; (4) establishing the type, amount, and terms of security to be provided by FGT to secure payment of just compensation to Defendants upon a final determination of same; and (5) granting such

other relief as the Court deems just and equitable.  A proposed Order setting hearing is

attached as Exhibit F, and a proposed Order to set a hearing is attached as Exhibit G.

Dated:  July 15, 2022.

Respectfully submitted,

**ZABEL FREEMAN**

/s/ *Thomas A. Zabel*
Thomas A. Zabel (Attorney in Charge)
Texas Bar No. 22235500
FBN 12160
tzabel@zflawfirm.com
1135 Heights Boulevard
Houston, TX 77008
713-802-9117 (telephone)
713-802-9114 (facsimile)

**Of Counsel**:
James A. Freeman
Texas Bar No. 00796580
jfreeman@zflawfirm.com
Vadim O. Bourenin
Texas Bar No. 24076284
FBN 3146033
vbourenin@zflawfirm.com
1135 Heights Boulevard
Houston, TX 77008
713-802-9117 (telephone)
713-802-9114 (facsimile)

**ATTORNEYS FOR PLAINTIFF**
**FLORIDA GAS TRANSMISSION COMPANY, LLC**

## CERTIFICATE OF COMPLIANCE WITH S.D. TEX. L.R.  7.1

The undersigned counsel certifies that counsel has complied with S.D. Tex. L.R. 7.1 in the following manner:

1.     Counsel for Plaintiff provided by e-mail a draft of the foregoing Motion and, consequently, conferred by telephone with Ms. Caroline Russe and Mr. Jeremy Baker,  counsel for Defendant Kurjee Enterprises, Inc., owner of the Tract BL12-TX-BR-004.000 ("Defendant").  Counsel for Defendant indicated that they likely would not dispute Plaintiff's right to take, however, at the time of the conference, counsel for Defendant had no authorization to either agree to the relief requested in the Motion or to oppose it.

2.     Plaintiff's counsel is not aware of other defendants to be represented by counsel, and, due to the large number of defendants in this action, Plaintiff's counsel could not organize and conduct a conference.


            */s/ Vadim Bourenin*
                Vadim Bourenin

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via ECF to counsel for those Defendants for whom appearances have been entered.  The above motion and attachments will also be provided via certified mail, RRR, to Defendant landowners, individually, and all other known Parties in Interest listed in Exhibit A to FGT's Complaint.

_s/ Thomas Zabel_
Thomas A. Zabel

24